MORGAN, LEWIS & BOCKIUS LLP
Barbara J. Miller, Bar No. 167223
Christopher J. Taylor, Bar No. 292369
Hannah V. Schnell, Bar No. 347467
600 Anton Boulevard
Suite 1800
Costa Mesa, CA  92626-7653
Tel:     +1.714.830.0600
Fax:    +1.714.830.0700
barbara.miller@morganlewis.com
christopher.taylor@morganlewis.com
hannah.schnell@morganlewis.com

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION and
BOSTON SCIENTIFIC NEUROMODULATION
CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE ALLEN, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; BOSTON SCIENTIFIC NEUROMODULATION CORPORATION, a Delaware corporation; and DOES 1-20, inclusive,<br><br>Defendant. | Case No. 4:23-CV-00414<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§ 1331, 1332(a), 1441, 1446]<br><br>[Filed concurrently with Declarations of Nancy Moorman and Suzanne Hove; Corporate Disclosure Statement; Certification of Conflicts and Interested Entities; and Civil Case Cover Sheet] |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. Sections 1331, 1332(a), 1441, and 1446, Defendant Boston Scientific Corporation ("BSC") and Defendant Boston Scientific Neuromodulation Corporation ("BSNC") (collectively "Defendants") hereby remove the above-entitled action from the San Mateo County Superior Court to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1331, 1332(a), 1441, and 1446.

**I.      PROCEDURAL BACKGROUND**

1. On December 28, 2022, Jesse Allen ("Plaintiff") filed an unverified putative class action complaint for damages and penalties in the Superior Court of the State of California, County of San Mateo, entitled *Jesse Allen, individually, and on behalf of other members of the general public similarly situated v. Boston Scientific Corporation*, a Delaware Corporation; Boston Scientific Neuromodulation Corporation, a Delaware Corporation; and Does 1 through 100, inclusive, Case No. 22-CIV-05487 ("Complaint" or "Compl.").

2. On December 30, 2022, Plaintiff served the Summons and Complaint on both BSNC and BSC. A copy of Plaintiff's Complaint is attached as **Exhibit A**, which is a true and correct copy of the Complaint served on Defendants in the Superior Court action. A copy of the Summons and accompanying case initiation and service documents are attached as **Exhibit B**, which is a true and correct copy of the process and orders served upon Defendants in the Superior Court action.

3. In the Complaint, Plaintiff alleges Defendants violated various provisions of the California Labor Code and committed unlawful business practices. In addition to actual, consequential, and incidental losses and damages, Plaintiff seeks general and special damages, liquidated damages, statutory and civil penalties, restitution, pre-judgment interest, declaratory relief, injunctive relief, costs, attorneys' fees, and "for such other and further relief as the court may deem just and proper." *See generally* Compl. (Prayer for Relief).

4. Plaintiff seeks to represent a putative class consisting of "[a]ll current and former hourly-paid or nonexempt employees of Defendants within the State of California at any time

during the period from four years preceding the filing of this Complaint to final judgment." Compl. ¶ 13.

## II. THIS REMOVAL IS TIMELY

5.  Plaintiff served Defendants on December 30, 2022 with the Summons and Complaint. Because this Notice of Removal is filed within thirty days of service of the Summons and Complaint on Defendants, it is timely under 28 U.S.C. §§ 1446(b) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (a defendant's 30-day removal period begins to run when the defendant is formally served with a complaint). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURIDICTION UNDER CAFA

Plaintiff brings this action as a putative class action. Compl. ¶ 1. Removal based on Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because (i) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs; (ii) the aggregate number of putative class members is 100 or greater; and (iii) diversity of citizenship exists between one or more plaintiffs and one or more defendants. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453. Defendants deny Plaintiff's factual allegations and deny that Plaintiff, or the class Plaintiff purports to represent, is entitled to the relief requested; however, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met.[1] Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

### A. Diversity of Citizenship Exists

6.  To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists; that is, that one putative class member is a citizen of a state different

---

[1] Defendants do not concede, and reserves the right to contest at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action. Defendants do not concede that any of Plaintiff's allegations constitute a cause of action against them under applicable California law.

from that of one defendant.  28 U.S.C. § 1332(d)(2); *see also, e.g., United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

7. An individual is a citizen of the state in which he is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  Plaintiff admits that Plaintiff "is an individual residing in the State of California, County of Santa Clara."  Compl. ¶ 5.  The Complaint does not allege any alternate state citizenship.  Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes.  Thus, at least one putative class member is a citizen of California for diversity jurisdiction purposes.

8. For purposes of establishing diversity jurisdiction, "[a] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is the "nerve center" where corporate officers direct, control and coordinate corporate activities).

9. Defendants are incorporated in Delaware, and Defendants' headquarters are located in Massachusetts.  Declaration of Nancy Moorman ("Moorman Decl."), ¶ 3.  Defendants' senior corporate officers are located at the Massachusetts headquarters where they exercise day-to-day control of the business and perform their executive and administrative functions.  *Id.* ¶ 4. As such, Defendants are not citizens of California, for the purposes of determining diversity under CAFA. *See* 28 U.S.C. § 1332(d)(10).

10. Based on Plaintiff's allegations in the Complaint, at least one member of the putative plaintiff class is a citizen of a state different from that of one defendant, as Plaintiff is a citizen of California and Defendants are citizens of Massachusetts.  Therefore, diversity jurisdiction exists under CAFA.  28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity"

under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant"). Further, since neither of the named Defendants is a citizen of California, the local controversy exceptions" to CAFA do not apply. *See* 28 U.S.C. § 1332(d)(4)(A)-(B)

**B.    The Putative Class Has More Than 100 Members.**

11.    To qualify for removal under CAFA, a lawsuit must be brought on behalf of at least 100 putative class members. 28 U.S.C. §1332(d)(5). Plaintiff asserts claims on behalf of a putative class and subclasses comprised of "[a]ll current and former hourly-paid or nonexempt employees of Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." Compl. ¶ 13. Defendants' business records show that approximately 318 employees worked for Defendants in California between December 28, 2019 and January 27, 2023. Declaration of Suzanne Hove ("Hove Decl."), ¶ 2, Exh. 1.

**C.    The Amount in Controversy Exceeds $5 Million.**

12.    Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Where, as here, a plaintiff does not expressly plead a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). However, the amount in controversy simply represents the potential amount at stake—it does not reflect actual liability. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

13.    Defendants' burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014). This exercise does not consider a plaintiff's likelihood of successful recovery. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount' . . . ." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). "[W]hen a defendant seeks federal-court

adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 135 S. Ct. at 553. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 554. "[T]he Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim" in assessing the amount in controversy. *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017).

14. To drive out any lingering "antiremoval presumption" in CAFA cases, our Court of Appeals recently "reaffirm[ed] three principles that apply in CAFA removal cases:"

> First, a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements. . . .
>
> Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions . . . .
>
> Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.

*Arias*, 936 F.3d at 922 (internal citations and quotations omitted). "[I]n assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Id*. at 925 (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). Such assumptions must be reasonably grounded in the underlying allegations of the complaint. *Id*. "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. Rep. 109-14, at 42 (2005) (citation omitted); *Rhoades v. Progressive Casualty Ins., Co.,* 410 Fed. Appx. 10, 11 (9th Cir. 2010) ("'[O]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much.'" (quoting *Lewis v. Verizon Commc'ns Inc.,* No. 10-56512, 2010 WL 4645465, *4 (9th Cir. 2010) (emphasis added)).

15. Defendants deny Plaintiff's factual allegations and deny that Plaintiff, or the class Plaintiff seeks to represent, is entitled to recovery. Defendants properly complied with the Labor Code provisions at issue at all relevant times. However, as detailed below, Defendants have established by a preponderance of the evidence that the amount in controversy exceeds $5 million and that this Court has jurisdiction pursuant to CAFA. 28 U.S.C. § 1332(d)(2). Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[2]

### 1. Plaintiff's First Cause of Action for Unpaid Overtime Places at Least $1,177,000 in Controversy

16. The Complaint alleges that "Plaintiff and other class members were not receiving wages for overtime compensation." Compl. ¶ 25. Plaintiff further alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, Defendants failed to pay overtime wages to Plaintiff and other class members for all hours worked. Plaintiff and other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation." *Id.* at ¶ 35. As a result, the Complaint alleges, "[p]ursuant to California Labor Code section 1194, Plaintiff and other class members are entitled to recover unpaid overtime compensation, as well as interest, costs, and attorneys' fees." *Id.* at ¶ 51.

17. Based on Plaintiff's allegations, it is plausible and reasonable to assume that Plaintiff seeks to recover at least one hour of minimum wage per week for all putative class

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendants' references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that each of Plaintiff's claims and theories of liability is without merit and that Defendants are not liable to Plaintiff or any putative class member. Defendants expressly deny that Plaintiff or any putative class member is entitled to recover any of the amounts or penalties sought in the Complaint. In addition, Defendants deny that liability or damages can be established either as to the Plaintiff or on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could recover any damages based upon the allegations contained in the Complaint or otherwise. Moreover, nothing in these calculations suggests that the alleged claims can be adjudicated on a class basis when actual facts are considered. "The amount tn controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

members. *Kastler v. Oh My Green, Inc.,* No. 19-cv-02411- HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages and unpaid overtime per week per class member "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations" and simply alleged a "pattern and practice" of failing to pay overtime and minimum wages). Defendants' records reflect that about 318 non-exempt employees have been employed from December 28, 2019 through January 27, 2023, for a collective total of about 26,000 weeks worked (actual amount is 26,084.71). Hove Decl. ¶ 2, Exh. 1. Assuming conservatively that each class member worked one (1) hour of unpaid overtime per week, and using each class member's most recent wage rate reduced by 10 percent, **Plaintiff's overtime wage claim places in controversy at least $1,177,000** (90% times each employee's current hourly wage rate by each of their number of work weeks from December 28, 2019 through January 27, 2023 by 1 hour per week by 1.5). Hove Decl. ¶ 2, Exh. 1.

        2.     **Plaintiff's Fourth Cause of Action for Unpaid Minimum Wages Places at Least $624,000 in Controversy**

18. The Complaint alleges that "Plaintiff and other class members were not receiving at least minimum wages for all hours worked." Compl. ¶ 29. Plaintiff further alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, Defendants failed to pay Plaintiff and other class members at least minimum wages for all hours worked." *Id.* at ¶ 37. According to the Complaint, "Plaintiff and other class members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorney's fees, and liquidated damages in an amount equal to wages unlawfully unpaid and interest thereon." *Id.* at ¶ 77. In addition to the balance of unpaid minimum wages, Plaintiff seeks to recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon" pursuant to Labor Code Section 1194.2. *Id.* at ¶ 78.

19. Based on Plaintiff's allegation, it is plausible and reasonable to assume that Plaintiff seeks to recover at least one hour of minimum wage per week for all putative class members. *Kastler,* 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of

1  unpaid minimum wages and unpaid overtime per week per class member "is a conservative
2  estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement
3  when plaintiff fails to include specific allegations."). Defendants' records reflect that about 318
4  non-exempt employees have been employed from December 28, 2019 through January 27, 2023,
5  for a collective total of about 26,000 weeks worked. Hove Decl. ¶ 2, Exh. 1. The lowest
6  minimum wage rate in effect in California during this time was $12.00 per hour. Assuming
7  conservatively that each class member worked one hour per week without being paid the
8  minimum wage, and that Plaintiff recovers the liquidated damages sought in the Complaint,
9  **Plaintiff's minimum wage claim places in controversy at least $624,000** [(26,000 work weeks
10 x $12.00 per hour x 1 hour per week) x 2].

  3.  **Plaintiff's Second Cause of Action for Failure to Provide Meal Periods Third Cause of Action for Failure to Authorize and Permit Rest Periods Put at Least $1,560,000 in Controversy**

14  20.  The Complaint alleges that "Defendants engaged in a pattern and practice of wage
15 abuse against their hourly-paid non-exempt employees within the State of California," which
16 "involved, inter alia, failing to pay for all hours worked, missed meal periods, and missed rest
17 breaks in violation of California law." Compl. ¶ 24. Plaintiff further alleges that "Defendants
18 failed to provide Plaintiff and other class members the required rest and meal periods during the
19 relevant time period as required under the Industrial Welfare Commission Wage Orders and thus
20 are entitled to any and all applicable penalties." *Id.* at ¶ 26. Plaintiff also alleges that "Plaintiff
21 and other class members did not receive all timely and proper "meal periods or payment of one
22 additional hour of pay at their regular rate of pay" or "rest periods or payment of one additional
23 hour of pay at their regular rate of pay when a rest period was missed. *Id.* at ¶ 28. According to
24 Plaintiff, Defendants had a "pattern and practice" of "fail[ing] to provide the requisite
25 uninterrupted and timely meal and rest periods to Plaintiff and other class members. *Id.* at ¶ 36.
26  21.  Based on these allegations, it is plausible and reasonable to assume that Plaintiff
27 seeks to recover one meal period premium and one rest period premium per class member per
28 workweek. *See Chavez v. Pratt (Robert Mann Packaging), LLC,* No. 19-cv-00719-NC, 2019 WL

1501576, at *3 (N.D. Cal. Apr. 5, 2019), leave to appeal denied, 2019 WL 5190914 (9th Cir. Aug. 1, 2019) ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods."); *Kastler,* 2019 WL 5536198, at *5 (agreeing that a 20% violation rate on meal and rest period claims is reasonable where allegations in the complaint suggest a limited violation rate); *Nunes v. Home Depot U.S.A., Inc.,* No. 2:19-cv-01207-JAM-DB, 2019 U.S. Dist. LEXIS 156261, at *6 (E.D. Cal. Sep. 12,2019) (finding defendant's assumption of one missed meal break and one missed rest break per week to be reasonable where complaint alleged that class members "periodically" or "from time to time" were denied required breaks); *Salazar v. PODS Enters., LLC*, No. EDCV 19-260-MWF (KKx), 2019 WL 2023726, at *3 (C.D. Cal. May 8, 2019) (where Plaintiff alleged that he and other employees were "occasionally only authorized" to take rest breaks, it was reasonable—even conservative—for defendant to assume one violation per week for purposes of a CAFA removal). Thus, assuming each putative class member experienced one meal period violation and one rest period violation per week, and using each class member's most recent wage rate reduced by 10 percent, **the meal and rest periods claims place in controversy at least $1,560,000** (multiplying 90% of each employee's current hourly wage rate by each of their number of work weeks from December 28, 2019 through January 27, 2023 by 1 hour per week and then by 2 for 1 meal period premium and 1 rest period premium per week). Hove Decl. ¶ 2, Exh. 1.

    4.    **Plaintiff's Fifth Cause of Action For Waiting Time Penalties Puts at Least $837,398 in Controversy**

22. Plaintiff's fifth cause of action is for "waiting time penalties" under California Labor Code § 203—which specifies that employers who fail to timely pay employees' wages at the time of their discharge or resignation must pay, as a penalty, "the wages of the employee . . . from the due date thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." The statute of limitations for waiting-time penalties claims is three years. *See*, *e.g.*, *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395, 1398 (2010).

23. Plaintiff alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, Defendants failed to pay Plaintiff and other class members the wages owed to them upon discharge or resignation." Compl. ¶ 38. Plaintiff further alleges that "Defendants' pattern and practice of failing to pay Plaintiff and other class members who are no longer employed by Defendants' their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code sections 201 and 202. *Id.* at ¶ 82. Plaintiff also alleges that "Plaintiff and other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to the thirty (30) day maximum as provided by Labor Code section 203." *Id.* at ¶ 84.

24. Plaintiff's fifth cause of action incorporates by reference the preceding paragraphs of the Complaint, which allege that "Defendants engaged in a pattern and practice of wage abuse against their hour-paid or non-exempt employees within the State of California" by "failed to pay them for all hours worked, missed meal periods, and missed rest breaks in violation of California law." Compl. ¶ 24. The preceding paragraphs further allege that "Defendants knew or should have known that Plaintiff and other class members were entitled to receive wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and that Plaintiff and other class members did not, in fact, receive such wages owed to them at the time of their discharge or resignation." *Id.* at ¶ 30. Thus, Plaintiff claim for waiting-time penalties claim is, at least in part, derivative of her claims for alleged unpaid overtime, minimum wage, meal period, and rest period claims. Based on these allegations, Plaintiff seeks to recover the maximum amount of waiting time penalties for each terminated employee. Compl. ¶ 84.

25. Given the foregoing allegations, it is reasonable to assume that Plaintiff seeks to recover the maximum amount of waiting time penalties for each putative class member. *Chavez*, 2019 WL 1501576, at *4 ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages."). In California,

124 of Defendants' non-exempt employees' employment ended between December 28, 2019 and January 27, 2023.  Hove Decl. ¶ 2, Exh. 1.  Each of these employees was full time and had a standard schedule of forty (40) hours per week and eight (8) hours per day.  Based on each terminated employee's final hourly rate of pay and standard eight (8) hour work-day, and assuming, as Plaintiff alleges, that each terminated employee is entitled to the maximum waiting time penalty of 30 days, **<u>Plaintiff's waiting time penalty claim places at least $837,398 in controversy</u>**.  Hove Decl. ¶ 2, Exh. 1.

### 5. Plaintiff's Sixth Cause of Action For Non-Compliant Wage Statements Puts at Least $428,250 in Controversy

26. Plaintiff alleges that wage statements issued to non-exempt employees in California are deficient under Labor Code § 226—which provides penalties of $50 for "initial" failures and $100 for all "subsequent" failures to provide the information required by the statute.  Labor Code § 226(e)(1).  Up to $4,000 in penalties may be collected for each employee. *Id.*  The statute of limitations for inaccurate wage statement claims is one year.  Cal. Civ. P. § 340(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1120 (2007).

27. The Complaint alleges that "Plaintiff and other class members did not receive complete and accurate wages statements from Defendants."  Compl. ¶ 31.  According to the Complaint, "[t]he deficiencies included, inter alia, that the failure to include the total hours worked by Plaintiff and other class members." *Id.*  Plaintiff further alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, Defendants failed to provide complete or accurate wage statements to Plaintiff and other class members." *Id.* at ¶ 39.

28. Based on such allegations, it is reasonable to assume for removal purposes a 100% violation rate on Plaintiff's wage statement claim. *Kastler,* 2019 WL 5536198, at *6 ("Because the baseline assumptions of one hour of unpaid minimum wage and one hour of unpaid overtime per week are reasonable, as noted above, Defendant's calculations for wage statement violations [which assume that each wage statement was in violation of section 226] are also reasonable.");

*Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL 327451, at *6 (N.D. Cal. Jan. 9, 2018) ("Inaccurate wage statement penalties do not depend on how many unpaid hours were worked, but whether any unpaid hours were worked.").

29. Approximately 235 non-exempt employees have been employed for Defendants in California from December 28, 2021 (one year before the filing of the Complaint) to January 27, 2023, for a total of about 4,900 pay periods during that one-year period. Hove Decl. Exh. 1. As explained above, since Plaintiff's Complaint alleges that wage statement violations based on predicate unpaid wage and unpaid meal and rest period premium violations, and it is reasonable to assume at least one such violation per week, then it is reasonable to assume, for purposes of removal, that each wage statement issued was non-compliant. Thus, even if we were to assume there were inaccurate wage statements during only 4,400 eligible pay periods (instead of the full 4,900 they were employed), **Plaintiff's inaccurate wage statement claim places in controversy at least $428,250** (235 x $50 (for each employee's "initial" violation) + 4,165 x $100 (for the "subsequent" violations)).

      6.    **Plaintiff's Expense Reimbursement Claim Puts at Least $390,000 in Controversy**

30. The Complaint alleges that "Plaintiff and the other class members were entitled to reimbursement for necessary business-related expenses." Compl. ¶ 32. Plaintiff further alleges that "Plaintiff and other class members are entitled to recover from Defendants their business-related expenses and costs incurred during the course and scope of their employment, plus interest accrued from the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the State of California." Compl. ¶ 94.

31. Although Plaintiff fails to allege any specific expenses that putative class members incurred and that Defendants failed to reimburse, Defendants conservatively assume that Plaintiff claims at least $15 in unreimbursed business expenses per week per putative class member. Even assuming a reduced workweek total of 26,000 work weeks, the Plaintiff's expense reimbursement claim puts in controversy approximately $390,000 (26,000 work weeks x $15 in unreimbursed expenses per week).

### 7. Plaintiff's Request for Attorney's Fees put Additional Amounts in Controversy, Exceeding the CAFA Threshold

32. The above claims put in controversy at least **$5,016,648**. In addition to this amount, Plaintiff also seeks recovery of attorneys' fees. Compl., Prayer for Relief, ¶¶ 8, 15, 26, 43, and 101. While Defendants deny Plaintiff's claim for attorneys' fees, attorneys' fees are properly included in determining the amount in controversy. As *Arias* makes clear, "*prospective attorneys' fees must be included in the assessment of the amount in controversy.*" *Arias*, 936 F.3d at 922 (emphases added); *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794–95 (9th Cir. 2018) ("The phrases 'all relief' and 'certain classes of damages' encompass *all of the plaintiff's future recovery*, not lost wages alone. Accordingly, *Chavez*'s reasoning *clearly applies to attorneys' fees*.") (emphases added).

33. For purposes of removal, courts in the Ninth Circuit often use a rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("20–30% as the usual range" for attorneys' fees); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund); *see also Arias* 936 F.3d 920, 927 (9th Cir. 2019). "[T]he amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." "Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be *added* to any claim for which attorneys' fees are available" for purposes of assessing the amount in controversy under CAFA. *Herrera v. Carmax Auto Superstores California, LLC*, No. EDCV14776MWFVBKX, 2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014) (emphasis added); *see also, e.g.*, *Molnar v. 1-800-Flowers.com, Inc.*, 2009 WL 481618, *5 (C.D. Cal. Feb. 23, 2009) ("Applying a 25% fee estimate to the $2,931,794.63 compensatory damages figure . . .yields an attorneys' fee award of $732,948.65. Therefore, the Court includes this amount in determining the amount in controversy."); *Tompkins v. Basic Research LLC*, 2008 WL 1808316, *4 (E.D. Cal. Apr. 22, 2008) ("[T]he Ninth Circuit has established that 25% of the common fund is a fair estimate of attorneys' fees. This therefore adds $500,000 to the amount in controversy.") (internal citations omitted).

34. The inclusion of attorneys' fees would add at least another **$1,044,812.50** to the amount in controversy, calculated as 25% of $4,179,250 (*i.e.*, the sum of $1,177,000 for the overtime claim, $624,000 for the minimum wage claim, $1,560,000 for the meal and rest break claims, $428,250 for the wage statement claim, and $390,000 for the expense reimbursement claim). Accordingly, the grand total in controversy, including attorneys' fees, totals at least **$6,061,460.50** (*i.e.*, the sum of $5,016,648 and $1,044,812.50).

## IV. VENUE

35. This action was originally filed in the Superior Court for the County of San Mateo. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V. NOTICE

36. Defendants will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI. CONCLUSION

37. Removal to this Court is proper under CAFA jurisdiction. If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: January 27, 2023                                                MORGAN, LEWIS & BOCKIUS LLP


By  */s/ Barbara J. Miller*
     Barbara J. Miller
     Christopher J. Taylor
     Hannah V. Schnell
     Attorneys for Defendants
     BOSTON SCIENTIFIC CORPORATION
     and BOSTON SCIENTIFIC
     NEUROMODULATION
     CORPORATION

# PROOF OF SERVICE

*Jesse Allen v. Boston Scientific Corporation, et al.*
USDC Northern District of California

I am a resident of the State of California, employed in the County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 600 Anton Blvd., Suite 1800, Costa Mesa, California 92626.

On January 27, 2023, I served on the interested parties in this action the within document(s) entitled:

## DEFENDANTS' NOTICE OF REMOVAL

[ X ] **BY MAIL:** - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ] **BY ELECTRONIC SERVICE:** by transmitting via e-mail or electronic transmission pdf document(s) listed above to the person(s) at the e-mail address(es) set forth below on January 27, 2023. The transmission was reported as complete and without error. My e-mail address is patricia.martin@morganlewis.com.

| **JUSTICE LAW CORPORATION**<br>Douglas Han, Esq.<br>Shunt Tatavos-Gharajeh, Esq.<br>Talia Lux, Esq.<br>751 N. Fair Oaks Ave., Suite 101<br>Pasadena, CA 91103<br>Tel: 818.230.7502<br>Fax: 818.230.7259 | *Attorneys for Plaintiff JESSE ALLEN*<br><br>Email:<br>dhan@justicelawcorp.com<br>statavos@justicelawcorp.com<br>tlux@justicelawcorp.com |
|---|---|

[ X ] **STATE:** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

[ X ] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on January 27, 2023, at Costa Mesa, California.

_____
Patricia Martin

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

PROOF OF SERVICE

DB2/ 44281520.1