DOUGLAS HAN (SBN 232858)
dhan@justicelawcorp.com
SHUNT TATAVOS-GHARAJEH (SBN 272164)
statavos@justicelawcorp.com
TALIA LUX (SBN 336074)
tlux@justicelawcorp.com
**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259

*Attorneys for* Plaintiff Jesse Allen

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE ALLEN, individually, and on behalf of other members of the general public similarly situated;<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>BOSTON SCIENTIFIC CORPORATION, a Delaware corporation; BOSTON SCIENTIFIC NEUROMODULATION CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive;<br><br>　　　　　　Defendants. | Case No.: 4:23-CV-00414-TLT<br><br>Assigned to:<br>Honorable Trina L. Thompson<br>Courtroom 9<br><br><u>PUTATIVE CLASS ACTION</u><br><br>**PLAINTIFF JESSE ALLENS REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>Hearing Date:　June 13, 2023<br>Hearing Time:　2:00 pm<br>Hearing Place:　Courtroom 9<br><br>Complaint Filed: December 28, 2022<br>Removal Filed:　January 27, 2023<br>Trial Date:　　　None Set |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   ARGUMENT**

**A.   Defendants' Notice of Removal, Opposition to Plaintiff's Motion to Remand and Supporting Declarations are Inadequate to Establish Jurisdiction Under the Class Action Fairness Act.**

None of the evidence Defendants Boston Scientific Corporation and Boston Scientific Neuromodulation Corporation (collectively "Defendants") brought forth in support of removal establish the amount in controversy by a preponderance of the evidence. Defendants, again, fail to offer any evidence in support of their proffered violation rates.

Defendants instead point out throughout their Opposition that Plaintiff has not submitted any alternative evidence to support remand. *See* Defendant's Opposition to Plaintiff's Motion to Remand ("Opposition") 11:15-16. The removing party here is Defendants. Defendants chose to invoke the limited jurisdiction of the federal courts by filing a notice of removal. *See* U.S. Const. art. III, § 2, cl. 1. It has long been established in the Ninth Circuit that "[t]he party seeking the federal forum [in Class Action Fairness Act cases still] bears the burden of establishing that the statutory requirements of federal jurisdiction have been met[.]" *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).

As thoroughly explained in the moving papers, once a plaintiff challenges a defendant's allegations regarding the amount in controversy, the burden is on the defendant to prove, by a preponderance of the evidence, that the amount in controversy has been met. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[e]vidence establishing the amount is required"); *see also Varsam v. Lab Corp. of Am.*, No. 14cv2719 BTM(JMA), 2015 U.S. Dist. LEXIS 90645, at *2 (S.D. Cal. July 13, 2015) (a "plaintiff is not required to submit evidence refuting the defendant's allegations and evidence of the amount in controversy in order to prevail on its motion to remand"). Moreover, courts consider which party has better "access to or control over the

records and information required to determine whether the amount in controversy is met." *Vasserman v. Henry Mayo Newhall Mem. Hosp.*, 65 F. Supp. 3d 932, 983 (C.D. Cal. 2014). Defendants cannot reasonably contest that they are in the best position to provide evidence pertaining to the amount in controversy.

Here, the Complaint does not specify the amount of damages and thus, Defendants must prove, by a preponderance of the evidence, that the amount in controversy exceeds $5 million. While Defendants may rely on "a chain of reasoning that includes assumptions[,]" Defendants' assumptions "cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197, 1199 (9th Cir. 2015); *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022).

**B.    Defendants' Estimate of the Amount in Controversy is Inflated and Speculative.**

While Defendants' Declarations provide *some* of the information Defendants are required to produce in order to meet their evidentiary burden, they fail to provide all of the data necessary to support Defendant's claims. *See generally* Declarations. As such Defendants' estimate of the amount in controversy is still inflated and speculative.

Plaintiff's Complaint is a critical part of the amount in controversy analysis. The complaint is the first document courts examine when determining the amount in controversy. *See Ibarra*, 775 F.3d at 1197. Here, Plaintiff alleged a "pattern and practice" of violations. *See generally* Dkt. No. 1-1, Ex. A ("Complaint"). "[I]n such 'pattern and practice' cases a defendant may still establish the requisite amount if, in making its calculation, it relies on extrapolations from admissible statistical evidence." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1189 (E.D. Cal. Aug. 16, 2016) (internal quotations omitted).

In sum, while Defendants may certainly rely on actual evidence with reasonable assumptions, Defendants derive their amount in controversy calculations using ***unsupported*** assumptions. Defendants, yet again, have failed to provide evidence as to

the applicable violation rate. *See Cackin v. Ingersoll-Rand Indus. U.S., Inc.*, No. 8:20-cv-02281-JLS-JDE, 2021 U.S. Dist. LEXIS 103783, at *3 (C.D. Cal. Jun. 2, 2021) (while the defendant proffered as evidence a declaration providing the data about the class members' total wages and hours during the relevant period, "[n]othing in the declaration purport[ed] to provide evidence that would assist the Court in making a reasonable assumption as to the applicable violation rate"). Contrary to Defendants' assertion, their calculations are by no means conservative or reasonable. Thus, Defendants' estimate of the amount in controversy should be disregarded.

### 1.  Unpaid Overtime and Minimum Wages

Contrary to Defendants' position, Defendants' calculations for both overtime and minimum wage claims are indeed duplicative. *See* Dkt. 16 Plaintiff's Motion to Remand ("Motion"), Section IV, subd. (A)(2) for a thorough discussion regarding the duplicative nature of Defendants' calculations. Because Defendants are double counting the unpaid wages under the premise of a minimum wage claim, Defendants' minimum wage calculation should be disregarded.

Moreover, Defendants have failed to provide evidence establishing the average shift length or average hours worked per week for putative class members. *See Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 U.S. Dist. LEXIS 4015, at *3 (N.D. Cal. Jan. 9, 2018) (holding the way in which unpaid wages are counted "for purposes of calculating the amount in controversy depends on whether employees worked more or less than 8 hours per day or 40 hours per week"); *see also Trigueros v. Stanford Fed. Credit Union*, No. 21-cv-01079-BLF, 2021 U.S. Dist. LEXIS 12027, at *13-*14 (N.D. Cal. Jun. 28, 2021) (finding the defendant provided substantial evidence of the average shift length where the declaration stated the average shift length was eight to nine hours and broke down full-time versus part-time non-exempt employees by year).

Unlike *Trigueros*, Defendants do not provide a definitive average shift length, nor do Defendants breakdown full-time versus part-time employees by year. Instead, Defendants initially classified their employees as either full-time or part-time, with zero

indication of how they reached these classifications. *See* Declaration of Suzanne Hove in Support of Removal ("Hove Removal Decl."). In support of their Opposition, Defendants now note that full-time employees "were listed as working a standard forty hours per week," again failing to provide a definitive average shift length and failing to break down the full-time versus part-time classifications per year. *See* Declaration of Suzanne Hove in Support of Defendants Opposition to Plaintiff's Motion to Remand ("Hove Opp to Remand Decl.") at ¶ 2. Clearly, by the plain language in both Suzanne Hove Declarations, these calculations are inherently speculative and inaccurate. Being listed as working "a standard forty hours per week" does not provide any information regarding the *average* shift length.

More importantly, Defendants, again, "***assumed*** that [each] putative class member worked one hour of unpaid overtime on just 20 percent of [his or her] workdays each week[.]" Opposition 14:15-16. Similarly, Defendants assume putative class members can "recover damages for . . . one hour of unpaid minimum wage each week." Opposition 17:14-15. Regarding overtime wages, Plaintiff alleged "[a]s a pattern and practice… Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and other class members (**but not all**)." *See* Compl. ¶ 49 (emphasis added). Plaintiff similarly limited his unpaid minimum wages claim, alleging "[a]s a pattern and practice… Defendants failed to pay minimum wages to Plaintiff and other class members (**but not all**)." *Id*. ¶ 76 (emphasis added). Plaintiff's allegations clearly specify that he is seeking recovery for only some of the putative class members, those who were not paid owed overtime/minimum wages. As Plaintiff has alleged only that some class members are due unpaid overtime/minimum wages, Defendants bear the burden of proving that their violation rates are based on evidence and reasonable assumptions flowing therefrom. *See Ibarra*, 775 F.3d at 1199.

Defendants again arbitrarily assumed that every putative class member worked one hour of unpaid overtime per week. This makes no logical sense giving the "but not all" language in the Complaint. It is wholly improper to calculate the unpaid overtime and

minimum wage values based on *all* employees and their total workdays. On this basis alone, Defendants' numerical estimate for unpaid overtime and minimum wages is unreasonable.

### 2. Waiting Time Penalties

In arguing for a one hundred percent (100%) violation rate, Defendants fail to address the allegations made within Plaintiff's Complaint. With respect to final wages, Plaintiff alleged, "[a]s a pattern and practice… Defendants intentionally and willfully failed to pay Plaintiff and the other class members (**but not all**) who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." *See* Compl. ¶ 81. Plaintiff also alleged, "Defendants' pattern and practice of failing to pay Plaintiff and other class members (**but not all**) who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code sections 201 and 202." *Id*. at ¶ 82.

It is clear Plaintiff did not allege that he and the putative class were entitled to the full 30 days for every employee. Instead, the allegations within the Complaint has qualifying language, unambiguously stating that, "not all" were entitled to recover. Contrary to Defendants' amount in controversy calculations for waiting time penalties, the allegations suggest that there are some putative class members who would be entitled to no recovery at all or only some limited recovery that is less than the 30-day maximum.

In *Armstrong v. Ruan Transp. Corp.*, No. EDCV 16-1143-VAP (SPx), 2016 U.S. Dist. LEXIS 148460, at *16, (C.D. Cal. Oct. 25, 2016), the court noted that it was inappropriate to assume a 100% violation rate for waiting time penalties because, "as the complaint is worded, it is clear that [p]laintiff is not alleging "every putative class member is owing waiting time penalties." This rationale was based on the fact that the plaintiff there specifically stated that her waiting time claims were limited to herself and certain putative class members. *Id*.

Moreover, in determining the amount in controversy surrounding waiting time

penalties, "[t]he critical computation is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days." *Drumm v. Morningstar, Inc.*, 695 F.Supp.2d 1014, 1018-19 (N.D. Cal. Feb. 26, 2010) (internal quotations omitted). Defendants' calculation here is erroneously based on the premise that each terminated employee is entitled to waiting time penalties of eight hours per day, for thirty days. This is entirely unsubstantiated, especially in light of the fact that it is wholly unclear whether putative class members worked, on average, eight hours per day. To reiterate, Defendants have only brought forth evidence stating full-time employees "were listed as working a standard forty hours per week," again failing to provide a definitive average shift length. *See* Hove Opp to Remand Decl. at ¶ 2. Because Defendants have offered no evidence for their assumption that every terminated employee worked eight hours a day, Defendants have not met their burden to justify the amount in controversy for Plaintiff's waiting time penalties claim by a preponderance of the evidence.

### 3.  Non-Compliant Wage Statement Penalties

In arguing for a ninety percent (90%) violation rate for non-complaint wage statement penalties, Defendants again fail to address the allegations made within Plaintiff's Complaint. With respect to Defendants' non-compliant wage statements, Plaintiff alleged that, "[a]s a pattern and practice, Defendants have intentionally and willfully failed to provide Plaintiff and other class members (**but not all**) with complete and accurate wage statements . . . ." *See* Compl. ¶ 87

Again, Defendants ignore the plain language contained within the allegations of the Complaint and make another flawed argument regarding the reasonableness of a 90% violation rate. Again, Defendants misunderstand their burden– as Plaintiff has challenged Defendants' amount in controversy allegations, it is Defendants' burden to prove by competent, summary-judgment type evidence that it has met the threshold amount. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89; *Ibarra*, 775 F.3d at 1197.

As Plaintiff alleged "not all" of the putative class members were subject to the predicate meal/rest break and unpaid overtime/minimum wage violations, it follows, and Plaintiff pleaded, that only some putative class members were subject to wage statement violations. *See, e.g., Barajas v. CPC Logistics Sols., LLC*, No. 22-cv-03911-WHO, 2022 U.S. Dist. LEXIS 172958, at *8, *12 (finding a 100% violation rate for derivative wage statement claims was unsupported by the broad allegations in the complaint, where the complaint referred to the defendants' "policies and practices of violating the wage and hour laws asserted"). As such, similar to *Barajas*, and for the reasons set forth in Plaintiff's Motion and Reply, Defendants' assumed violation rate of 90% is inappropriately speculative and cannot form the basis of its amount in controversy allegations.

### 4. Meal and Rest Break Violations

In their argument regarding the amount in controversy for Plaintiff's meal and rest break claims, Defendants again have failed to justify removal by a preponderance of the evidence. Like their amount in controversy calculations for Plaintiff's unpaid overtime and minimum wages claims, Defendants improperly "***assume***," without any substantiation whatsoever, "one meal and one rest period violation per workweek[.]" Opposition 17:28-18:2; 18:15-17. Defendants base their violation estimates on the fact that "all putative class members . . . worked a standard forty hours per week[,] . . . which means they typically worked shifts long enough to be entitled to one meal break and two rest breaks." Opposition 19:23-25.

Foremost, Defendants' estimate for meal period violations is unsupported by evidence because "the entitlement to meal periods depends on the length of a shift not the number of hours worked in a workweek." *Amort v. Ecco Retail, LLC*, No. 22-cv-05812-DMR, 2022 U.S. Dist. LEXIS 222366, at *11 (N.D. Cal. Dec. 9, 2022) (referencing Cal. Code Regs. tit. 8, § 11070(11) ["[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . ."].). Defendants have provided no support for their contention that putative class members

typically worked shifts long enough to be entitled to one meal break and two rest breaks. In other words, Defendants have failed to bring forth any evidence regarding putative class members' daily shift lengths.  Thus, Defendants' amount in controversy calculation for meal break violations must be disregarded.

Further, in *Jauregui*, the Ninth Circuit reversed a remand order where the removing party "offered substantial evidence and identified assumptions to support its valuation of each of the various claims[.]" 28 F.4th at 994.  With regard to rest breaks, the removing party's declaration provided the number of shifts of 3.5 or more hours, which would warrant a rest break, in support of its amount in controversy calculation. *Jauregui v. Roadrunner Transp. Servs., Inc.*, No. 2:21-cv-04657-RGK-PD, 2021 U.S. Dist. LEXIS 171406, at *4 (C.D. Cal. Sept. 8, 2021).

Similar to Defendants' calculation for meal breaks, Defendants' amount in controversy calculation for rest break violations must be disregarded.  Unlike *Jauregui*, Defendants have failed to offer even a shred of evidence outlining the average shift lengths for putative class members.  Thus, while Defendants' proffered violation rates may have been found to be reasonable in other cases, Defendants here offer no evidence to support their conclusory allegations that their assumptions here are reasonable in light of Plaintiff's allegations in his complaint.

Under *Jauregui*, "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." 28 F.4th at 996.  Therefore, Plaintiff urges this Court to reject Defendants' unsubstantiated assumptions for the amount in controversy for Plaintiff's meal and rest break claims and to conclude that Defendants failed to meet their burden.

        5.    <u>Reimbursement Claim</u>

Defendants contend that "Plaintiff could have challenged Defendants' reasonable assumption of $15 in unreimbursed business expenses per week by . . . explaining to the court the type of expenses putative class members alleged[ly] incurred."  Opposition

23:25-24:2. Defendants go on to state that Plaintiff "has superior knowledge of the factual basis for his allegations, including the type of expenses at issue[.]" *Id.* at 23:3-4.

The fatal flaw with Defendants' argument is, again, Defendants fail to provide any evidence supporting their amount in controversy calculation for Plaintiff's reimbursement claim. As thoroughly discussed in Plaintiff's Motion, it is unreasonable for Defendants to assume $15 in unreimbursed business expenses per week, per putative class member, given the "but not all" language in Plaintiff's complaint. *See* Removal at ¶ 31; *see also* Compl. at ¶ 94. Moreover, it is entirely unclear where Defendants came up with this $15 amount, especially in light of the fact that Defendants have failed to identify what purported business expenses putative class members incurred.

      6.  <u>Attorneys' Fees</u>

Finally, Defendants assert that the Court should consider and include in the amount in controversy attorneys' fees of $1,044,812.50. Opposition 15:13-17. This figure is based on a 25% benchmark of Defendants' calculations for the total amount in controversy.

Plaintiff does not dispute that where the underlying law provides for the payment of attorneys' fees, the amount of fees is included in calculating the amount in controversy for CAFA jurisdiction. However, because Defendants have not supported their amount in controversy estimates for Plaintiff's causes of action, it is improper for Defendants to apply 25% attorneys' fees on the overall claimed amount in controversy. *See Amort*, 2022 U.S. Dist. LEXIS 222366, at *17-*18.

**C. Defendants Have Failed to Show, by a Preponderance of the Evidence, that the Amount in Controversy Exceeds $5 Million.**

Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $5 million. Defendants' assumptions surrouding their calculations are still unsubstantiated and unreliable. Defendants "offered an estimate of the amount in controversy" but "[b]ecause that estimate relied on several unreasonable assumptions, it must be rejected." *Hayes v. Salt & Straw, LLC*, No. CV 20-03063-CJC(KSx), 2020 U.S.

Dist. LEXIS 92475, at *16 (C.D. Cal. May 27, 2020).

As thoroughly explained above, Plaintiff's Complaint does not support Defendants' unsubstantiated, purportedly "conservative," estimated violation rates. Assuming *arguendo* Defendants' amount in controversy calculations for some of Plaintiff's claims are justified, it is abundantly clear Defendants' calculations for the remaining claims are inflated, given the "but not all" language in Plaintiff's Complaint. As such, Defendants have failed to establish the amount in controversy exceeds $5 million, by a preponderance of the evidence.

## II. CONCLUSION

Defendants continue to make speculative assumptions concerning the frequency of alleged violations, and erroneously assume varying violation rates without evidentiary support. Defendants thus failed to prove, by a preponderance of the evidence, that the amount in controversy exceeds $5 million. Accordingly, this case must be remanded back to the San Mateo County Superior Court.

DATED: March 20, 2023                             **JUSTICE LAW CORPORATION**

                                              By: /s/ Talia Lux
                                                  Douglas Han
                                                  Shunt Tatavos-Gharajeh
                                                  Talia E. Lux
                                                  *Attorneys for* Plaintiff